## VANG et al. v. LEWELLYN.

### SAME v. HEINER, Collector of Internal Revenue.

Circuit Court of Appeals, Third Circuit.
September 27, 1929.

Nos. 4053, 4054.

Wm. G. Heiner, of Pittsburgh, Pa., for appellants.

John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, and Elden McFarland, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and John A. McCann, of Pittsburgh, Pa., of counsel), for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

WOOLLEY, Circuit Judge. Thomas Cronin Company, after payments made under protest, brought these suits against collectors of internal revenue in office at different periods to recover corporation income and excess profits taxes assessed and collected for the years 1917 to 1922 under provisions of the Revenue Acts of 1917, 1918, and 1921 (39 Stat. 1000, 40 Stat. 1057, 42 Stat. 227). The cases were tried to the court without a jury mainly on facts stipulated. The defendants had judgments, and the plaintiff appealed.

Of the court's many findings of fact the controlling ones will be compressed into the following statement:

The plaintiff company during the tax years in question was engaged in constructing roads for the city of Pittsburgh and the county of Allegheny under contracts calling for payments by installments as work progressed. Generally the construction work was finished within the year it began; sometimes it extended into the next year. Taking one contract as an illustration of what was done under all, when work had been finished and the last installment of the contract price paid, the company offset expenditures against receipts, and regarded the difference as profit or loss on that job. As under each contract the company was required, at its own expense, to maintain the road free of all defects arising from materials or construction for a period of five years after completion, it estimated the probable maintenance costs and set aside an estimated reserve to cover them. This it deducted from the profits it had actually made on the contract, and, in its original tax returns, reported the difference as taxable net income for the year the work was finished. The Commissioner, however, disallowed the estimated reserves for maintenance as deductions, holding that the company's liability for maintenance was contingent, not fixed, and therefore not within the law of allowable deductions. Then the company filed amended returns by which it showed that it kept its accounts on the basis of completed contracts, represented that a contract was not completed until the end of the maintenance period, declared its income from the contract received at that time and calculated its tax at the rate then prevailing.

The trouble in these cases arose out of confusion in the use of the term "lawful method of bookkeeping." The taxpayer's method was for its own purposes entirely lawful, but for tax purposes it was not lawful unless it clearly reflected income. What the company did finally, as shown by its amended returns on which it makes its last stand, was to regard a contract as not completed (and therefore its profits and gains not income subject to tax) until the end of the five years' period of maintenance following the full completion of the work and full payment of the contract price when final

maintenance costs had become definitely known. It then put this theory of postponed completion of work and postponed taxable income into bookkeeping operation by carrying installments received on account of the contract price as liabilities and construction expenditures as credits, and also maintenance expenditures as credits, until at the end of the maintenance period it adjusted the books and struck a balance which disclosed a profit or a loss.

The practical result of this method of bookkeeping was, at different periods, to reflect a loss when no loss had been incurred, conceal profits when profits had been made or were in the making, and postpone completion of the contract and final determination of profits as taxable income to the end of the maintenance period and postpone payment of taxes on income actually received years earlier when taxes were higher until years later when they were lower. Even so, the method of bookkeeping was lawful for tax purposes if it truly reflected income. Did it?

Oddly enough, moneys coming in as partial payments for work done were by this method treated as liabilities or as moneys going out, and moneys going out in the way of expenditures were treated as credits or moneys coming in. As this did not reflect what actually happened it did not reflect income. While this method of bookkeeping was entirely honest and was plain enough to the plaintiff and capable of readjustment in the future, it did not show profits and losses, that is, income or lack of it, on a given contract until, at the plaintiff's will, such readjustment was made. What actually happened was the receipt of income by payment of the contract price upon the completion of the work, whether within or beyond the year. We hold that, when the construction work was finished and the contract price paid and the road turned over to the city or county, the contract was completed, disclosing definitely gain or loss in the transaction. This was how the company itself first regarded it when it made and set aside estimated reserves to cover costs of maintenance on its many contracts and then claimed them as deductions from income received in the year the transactions came to an end by payment and delivery. The company's engagement to maintain the work in good condition for five years after completion as a pledge of its workmanship was clearly a contingent liability which might or might not cost money—it occurred in only 3 out of every 12.5 jobs—and, accordingly, might or might not

reduce the net income from a contract closed by final payment long before. Costs of maintenance, if any, would of course be a subject for reduction from income in the year in which income was received, but such costs, having no effect upon or relation to the final payment of the contract price at the end of the work, would not keep the contract open and postpone payment of the tax on the income received.

Nor does the fact that the company kept its books on the accrual basis help it for, however looked at, the liability for maintenance was contingent upon the need of maintenance. When books are kept on an accrual basis, a liability must be fixed either in terms or by the occurrence of events from which it is determined before it can be deducted. United States v. Anderson and United States v. Yale & Towne Mfg. Co., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; United States v. Guinzburg (C. C. A.) 278 F. 363.

We affirm the judgments in these two cases on the reasoning of the learned trial court as it related to the tax question. But in Vang v. Lewellyn the learned court gave an additional reason for the judgment in that case, to the effect that this personal action against the former collector cannot be maintained, as the suit should have been brought against the United States. Semple & Co. v. Lewellyn (D. C.) 1 F.(2d) 745; Sage v. United States, 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828. This question is moot in view of the court's decision on the other ground and of our affirmance of its decision on that ground.