## COMMISSIONER OF INTERNAL REVENUE v. OLD DOMINION S. S. CO.

### No. 98.

Circuit Court of Appeals, Second Circuit.
Jan. 5, 1931.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, and Morton Poe Fisher, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. T. Haslam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Arthur A. Ballantine and George E. Cleary, both of New York City, for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The taxpayer's transportation system was seized and operated by the government, beginning January 1, 1918, and ending February 29, 1920. Just compensation for such use of the properties for the period was fixed at $899,938.53 and payment made under an agreement of September, 1921. The standard return for such use under the Federal Control Act (chapter 25, Act March 21, 1918, 40 Stat. 451) was exceeded by $409,067.92. The Board of Tax Appeals held that this just compensation was accrued income for the years 1918, 1919, and 1920 in which it was earned. The Commissioner contends the excess above the standard return must be accounted for as income for the year 1921, the year in which the exact amount was determined.

Section 212(b) of the Revenue Act of 1918 (chapter 18, Act Feb. 24, 1919, 40 Stat. 1057) requires that net income be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. But, if no such method of accounting has been employed or if the method does not reflect the income clearly, computation must be made upon such basis as in the opinion of the Commissioner does clearly reflect the income.

In reporting for 1918, the taxpayer referred to its "income from leasing of line" as the sum of $252,893.61, the amount of its standard return as then estimated, with the notation that this amount might be increased by reason of government control and operation and the fixation of just compensation at a later period. In 1919 it fixed the amount of $250,711.64 with a similar notation. The Interstate Commerce Commission later determined the taxpayer's standard return to be $226,841.72, and the Commissioner seeks to limit the accrued income for 1918 and 1919 to this lesser amount, although the just compensation fixed for these years was $415,356.25. In filing its return, the taxpayer followed the method of reporting the full rental income in the years in question pursuant to article 52, Treasury Regulation 45, and accounting circular 79 of the United States Railroad Administration dated March 1, 1919. In the latter, it is provided that the "return should be based upon the corporate records indicating the amount of its standard return, other income and authorized deductions. If complete data is not available, due to claims pending for extra compensation or for other reasons, approximate figures may be submitted, to be followed later by accurate returns."

Section 1 of the Federal Control Act of March 21, 1918 (40 Stat. 451) provides that the carrier and the President may agree upon just compensation for the use of the properties taken over by the President. By the act it is to be an annual sum for each year of federal control not exceeding the carrier's railway operating income for three years ended June 30, 1917. This is referred to as the standard return, and, where this is accepted by the carrier, the average annual railway operating income as determined by the Interstate Commerce Commission is conclusive. By the same section 1, where the standard return is for any reason plainly inequitable as the measure of just compensation, the President is authorized to agree with the carrier upon such amount as just compensation as he shall find to be just under the circumstances of the particular case. It makes no distinction between just compensation based upon a standard return or any other basis. It does provide for compensation at an annual rate. At bar, while the just compensation was determined and paid in 1921, it resulted nevertheless from negotiations which started in 1918. The taxpayer claimed it was entitled to more than the standard return, and it was later so determined. The agreement finally arrived at provided for the payment of a lump sum as just compensation and the amount in excess of the so-called standard return is the difference between the compensation due the taxpayer and that which would have been its standard return as finally determined by the Interstate Commerce Commission. It was earned as annual compensation in 1918, 1919, and 1920. The compensation bore no relation to the year 1921 when it was paid. The government was not in possession in 1921, and the expenses of 1921 did not contribute to the production of such income.

The tax law (section 200 of the Revenue Act of 1918 [40 Stat. 1058]; section 204, Revenue Act of 1921; section 200, subd. 4, Revenue Act 1921) permits the use of the accrual basis of accounting. U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Rouss v. Bowers, 30 F.(2d) 628 (C. C. A. 2). It was the purpose of the law to

have the taxpayer make return of his true income, and his accounting records should be maintained to enable him to do so. This taxpayer employed the accrual basis of accounting as required by the Interstate Commerce Commission. The purpose of such accrual basis is to reflect properly the time as to which items should enter into the record. Income and deductions are to be included for the period to which they are truly attributable irrespective of the time of payment.

■ A deduction may not be accrued if it is wholly uncertain, at the end of the year, that such deduction will never have to be paid or if the amount is contingent upon later events. Lucas v. Amer. Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538. In that case, the Commissioner denied the deduction from the 1919 income of damages for breach of contract in 1919 when the liability for the amount was determined in 1923, and the court held that, while the facts determining the liability occurred in the year of the breach, the amount to be recovered and the legal liability therefor depended upon future events, suggesting that the plaintiff there might have secured other employment and reduced the recovery to a nominal amount. In Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, the Commissioner refused to attribute to that year an amount voted and paid in 1920 as compensation to officers for services rendered in prior years. The court pointed out that prior to 1920 no liability had been incurred by the taxpayer, and allowed the deduction. It was held not to be an ordinary and necessary expense paid or incurred during prior years. There was no obligation to pay for services rendered in the earlier years, nor was there an earlier accrual of liability. Here there was an admission of liability by the government, negotiations for a settlement were begun, and the taxpayer accrued during the years in question just compensation on its books in the manner and to the extent required by the regulations then in effect. It was a conceded liability; the amount, however, was not determined until a later year. The government did not concede liability to pay merely the standard return but just compensation. Just compensation for the use of the properties for the years 1918, 1919, and 1920 was being incurred each year. Nothing remained to be determined at the close of each year except the amount of just compensation on the basis of the past facts and the established principles. It depended upon no arbitrary discretion of the Director General. It was reasonable to account for it in the years in question in the manner described.

Moreover, it is clear that the Federal Control Act of March 21, 1918 (40 Stat. 451), by its phraseology, showed the intent of Congress that just compensation to the carrier, for the use of the carrier's property, should be paid on an annual basis and subject to the income tax then in effect. Section 1 of the Federal Control Act provides as to each carrier "that during the period of such Federal control it shall receive as just compensation an annual sum, payable from time to time in reasonable installments, for each year and pro rata for any fractional year of such Federal control. * * *" Section 2 provides that, in advance of any agreement as to just compensation, the President may pay the carrier "an annual amount" not exceeding 90 per cent. of the estimated annual amount of such just compensation. Section 3 provides for the determination of the annual compensation by the Board of Referees or by the Court of Claims in case no agreement is reached between the carrier and the Director General. Thus Congress contemplated a determination as promptly as possible of the annual amount, which might be the standard return or more. When arrived at, it was the just compensation for the use of the carrier's property during each year of federal control.

Section 1 refers to income taxes of the carriers, and provides that, as to federal taxes assessed and paid for the period of federal control, they shall be paid by the carrier out of its funds or shall be charged against or deducted from the just compensation.

No practical difficulties in the administration of the taxing acts will occur by permitting the accrual of just compensation of the carriers as income of the years of federal control in which earned. The Commissioner has five years after the return is filed to audit the returns for the years in question. Section 250(d), Revenue of 1918 (40 Stat. 1083). The amount of just compensation was determined in 1921, and at that time the returns of 1918, 1919, and 1920 were still subject to review. The determination is approved.

The order is affirmed.