### BAUER BROS. CO. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 5270.

Circuit Court of Appeals, Sixth Circuit.

Feb. 9, 1931.

H. C. Corry, of Springfield, Ohio (Martin & Corry, of Springfield, Ohio, on the brief), for petitioner.

J. G. Remey, of Washington, D. C. (Mabel Walker Willebrandt, John Vaughan Groner, Dorothy A. Moncure, C. M. Charest, and D. V. Hunter, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN and HICKS, Circuit Judges, and SIMONS, District Judge.

SIMONS, District Judge.

The petition is filed to review a decision of the United States Board of Tax Appeals redetermining a deficiency in income and excess profits taxes for the year 1918 against the petitioner. The petitioner kept its books, and its income was reported upon an accrual basis. In its return for 1918 it deducted as an expense for that year bonuses allowed to certain officers and employees which were paid in 1919, pursuant to a resolution passed at a meeting of its board of directors in the latter year. This deduction was disallowed by the Commissioner of Internal Revenue as an expense for 1918, and, upon appeal to the United States Board of Tax Appeals, the Commissioner's finding was upheld. Since the errors complained of in the decision of the Board of Tax Appeals are with a single exception, which is not deemed material, errors of law and not erroneous findings of fact, we accept the facts as found by the Board of Tax Appeals.

The petitioner is a close corporation controlled by three Bauer brothers, who own all of the preferred stock, and all but thirty shares of the common stock, the thirty shares of common stock being owned by three employees, who, with the Bauer brothers, make up the board of directors. The only reference to additional compensation for 1918 which appears in the petitioner's minutes is

a resolution passed March 3, 1919, in part as follows:

"It was moved by Carl Caskey and seconded by W. E. Copenhaver that a bonus salary for the year 1918 be given to such officers of the Company and heads of Departments as have been instrumental in procuring the successful year's result for 1918, the amount of this bonus and the division of the same to be left to the discretion of the President."

It was customary for the directors of the petitioner to have but one meeting each year. This was usually held in the latter part of February or the early part of March. Officers and directors were elected at this meeting, after which the meeting was usually adjourned. The three brothers met frequently in informal conferences for the purpose of planning, directing, managing, and supervising the conduct of the business. In these conferences the three brothers decided during the summer of 1918 that, beginning with that year, bonuses, rather than salary increases, would be given to deserving employees. Before the end of the year, they decided upon the men to whom bonuses would be paid and the amount to be paid each for that year. No book entry or written memorandum relating to bonuses was made during the year. The policy of bonus payments was adopted after the brothers realized that other concerns were increasing the amount of compensation paid employees, that some of their own men were demanding increases, and could get better salaries elsewhere, and that it would be advisable to satisfy them in this way. Thereafter, if a man to whom a bonus was to be paid complained to one of the brothers, he would be told that bonuses were to be paid to deserving men, and that he would receive a bonus. Salaries were not usually discussed at the annual meeting of the board of directors, but it does not appear how salaries had been decided upon previously. Caskey, who kept the books of the petitioner, was not informed of the amounts of the bonuses or of the men who were to receive bonuses until several days after the meeting of March 3, 1919. As soon as he received a list from the president, he made the necessary book entries to distribute the bonuses through credit accounts before closing the books for 1918. It was usual for the books to be kept open until inventories had been completed and dividends decided upon. The taking of the inventory usually required about six weeks, and was begun immediately after the close of the year.

The issue before the Board of Tax Appeals, and now before the court, is whether the additional compensation paid to officers and employees of the petitioner for services rendered during 1918 was an allowable deduction incurred during the year 1918 under the provisions of section 234(a)(1), and section 200 of the Revenue Act of 1918 (40 Stat. 1058, 1077). The applicable language of section 234 is as follows:

"Sec. 234(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * *"

It being conceded by the Commissioner that the amount of the bonuses was a reasonable allowance for salaries or other compensation for personal services actually rendered, and the bonuses not being paid in 1918, the only question presented is whether they were incurred in 1918 within the meaning of the statute. Our first concern is with the sense in which the term "incurred" is used in section 234. It seems not to be disputed here that expenses are incurred only when there is an agreement or a legal obligation to pay them within the taxable year. Indeed, that seems to be the view taken of the very language of this section by the Supreme Court of the United States in Lucas, Commissioner of Internal Revenue v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733.

In section 200 of the Revenue Act of 1918, the following definitions are given:

"The term 'paid,' for the purposes of the deductions and credits under this title, means 'paid or accrued' or 'paid or incurred,' and the terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under section 212."

In United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347, the Supreme Court had before it an issue as to the interpretation of the word "accrue" in various sections of the Revenue Act of 1916 (39 Stat. 756). It held:

"In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also

true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued."

It will therefore be observed that, whether the term "incurred" as used in the Revenue Act of 1918 is used in a technical legal sense or in an economic or bookkeeping sense, the expenses are not incurred unless there has arisen a legal obligation to pay them, and they do not accrue within a given taxable year unless all of the events which fix the amount and determine the liability of the taxpayer to pay occur within that year. Applying either or both of these tests to the facts as found by the Board of Tax Appeals in the instant case, we find that the three Bauer brothers decided during 1918 that beginning with that year bonuses would be given to deserving employees. They decided upon the men to whom bonuses would be paid, and the amount to be paid to each for that year. Thereafter, if a man to whom a bonus was to be paid complained to one of the brothers, he would be told that bonuses were to be paid to deserving men, and that he would receive a bonus, but no employee was told the amount he was to receive. No book entry or written memorandum relating to bonuses was made during the year. It seems to us to be clear from these facts that, whatever the promises were that were made, there did not result from them a legal obligation which could be enforced, either on the basis of express or implied contract. We are not here concerned with the authority of the brothers Bauer to bind the corporation. It may be assumed, without deciding, upon the facts disclosed by the record, that through a course of conduct on the part of the corporation they had such authority, for whether they had or did not have such authority is not determinative of the issue here involved. There was lacking that definiteness which

under familiar principles of the law of contract fixed the legal liability of the corporation, at least in any such amount as was afterwards allowed.

Nor can the corporation's liability be sustained during the year 1918 upon the basis of a quantum meruit, even were we to assume that there is room for the application of this principle, while in fact a definite contract already existed for the payment of salaries, nor were there circumstances present from which the value of the additional services in the amount later fixed could be ascertained upon the basis of their fair reasonable value. since it appears from the schedule that the bonuses afterwards determined during the year 1919, at least in so far as all employees are concerned other than the three Bauer brothers, were fixed arbitrarily and with no definite relationship to existing salaries. It must be remembered that what is sought to be deducted for 1918 is the amount actually allowed and paid in 1919, and not some other sum which might have been otherwise determined. What is said in connection with the theory of quantum meruit is equally applicable to the contention based upon the theory of estoppel. Assuming that the corporation was estopped to deny that it had promised bonuses, what bonuses had it promised and how could they be ascertained in advance of the determination that was afterwards made? The same thing may be said of the claim that the resolution of the board of directors in 1919 was a ratification of something previously done. We have already assumed that the brothers had authority to do what they did in so far as they did it. The theory of ratification adds nothing to that. If an unauthorized promise is so vague and indefinite as to be incapable of legal enforcement, it adds nothing to its enforceability at the time it was made that the lack of authority is afterwards cured by ratification, and if, as contended, an agreement originally too vague for enforcement becomes definite by subsequent performance, it can hardly be said that it was enforceable at any time before it became definite.

We conclude that the Board of Tax Appeals arrived at correct findings of fact and conclusions of law, and its decision is therefore affirmed.