## COMMISSIONER OF INTERNAL REVENUE v. MIDLAND VALLEY R. CO.

### No. 497.

Circuit Court of Appeals, Tenth Circuit.

April 11, 1932.

Morton K. Rothschild, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, L. A. Norman and J. T. Haslam, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel, on the brief), for petitioner.

Schofield Andrews, of Philadelphia, Pa. (William R. Spofford and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., on the brief), for respondent.

Before COTTERAL and McDERMOTT, Circuit Judges, and KENNAMER, District Judge.

COTTERAL, Circuit Judge.

The Commissioner of Internal Revenue determined there was a deficiency of $121,-239.08, in the return made by the Midland Valley Railroad of income and profits tax for the calendar year 1920. A redetermination was sought by the company before the Board of Tax Appeals, which decided the deficiency was $23,333.66. The Commissioner has filed a petition for review of that decision.

The Commissioner found the deficiency arose by taxing the company with the standard return under the Federal Control Act (chapter 25, 40 Stat. 451) for 1918 and 1919 and the compensation finally awarded to the company for 1920. The Board ruled the final award should be allocated to each of those years. This is the controversy before us.

The President took control of the railroad on December 26, 1917, and surrendered it on February 28, 1920. By the said act, he was authorized to pay the railroad company as just compensation, if accepted, a standard return, which was the average annual railway operating income for the three years preceding federal control. The company applied for compensation in excess of the standard return. The Director General offered an increased annual amount, the company refused to accept it, and the matter was referred to a Board of Referees, which fixed the annual compensation at $765,679. The Director General first declined to accept it, the dispute was put in suit before the Court of Claims, but that amount was finally agreed to as a final settlement in 1920. The standard return was $444,435.95. Meantime, the company filed its tax return for 1918 and 1919. For 1918 it returned the amount received from the Director General, $270,000,

and for 1919 the amount of the standard return. In 1921, the company filed amended returns for 1918 and 1919, increasing the compensation to $765,679 for each of those years, and made a return of one-sixth of that sum for the two months of 1920. The audit made by the Commissioner of the amended returns shows that he excluded, for each of the years 1918 and 1919, the excess of $321,-333.05 of the final compensation over the standard return, and added the total of $642,-666.10 as income for 1920, footing $770,279.-26 for that year.

The method pursued by the Commissioner does not conform to section 212(b) Revenue Act of 1918 (chapter 18, 40 Stat. 1057, 1064), which requires computation of net income on the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of such taxpayer, and provides that "if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income." True income when it accrued was the legal basis of return. The Interstate Commerce Commission required that method of accounting. The advancement made by the government and the standard returns were only partial income for the period of federal control. Amendment of the returns was requisite to show actual compensation awarded on final settlement with the Railroad Administration. The original returns did not disclose it.

The railroad company was entitled to indemnity for each year its property was held by the government. Annual compensation was authorized by the Federal Control Act. It is only necessary to consider that under the Fifth Amendment to the Federal Constitution it was not competent nor attempted to fix the compensation by law. The power to take over the railroads was analogous to the right of eminent domain. North Carolina R. Co. v. Lee, 260 U. S. 16, 43 S. Ct. 2, 67 L. Ed. 104. Just compensation was due the company and it was a subject of judicial inquiry. Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 S. Ct. 622, 37 L. Ed. 463. It was of course reached upon the agreed settlement.

The conception that the compensation accrued in 1920 is not in accord with the facts, nor is it sustained in principle. When ascertained it was as of the dates when liability was incurred. And the returns were properly amended to show the fact.

The question involved was ruled favorably to the contention of the company in Commissioner v. Old Dominion Steamship Co. (C. C. A.) 47 F.(2d) 148. The opinion is sound and it is supported by the statutes and authorities cited. It is criticized by counsel for the Commissioner because it failed to distinguish between compensation representing the standard return and that in excess of it, and it is said that final compensation could not properly be accrued on the taxpayer's books. The criticism is not well founded. It prefers current book entries of receipts to compensation later reached after necessary delay, and confuses a certain liability with one dependent on future facts. The compensation of the railroad company was not contingent on any future event. Only the final ascertainment of it was deferred. See Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262.

Our conclusion is that the final order of the Board of Tax Appeals is correct, and it is therefore affirmed.