## COMMISSIONER OF INTERNAL REVENUE v. R. J. DARNELL, Inc.

### No. 5900.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1932.

Morton K. Rothschild, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Arthur Carnduff, all of Washington, D. C., on the brief). for petitioner.

B. H. Saunders, of Washington, D. C. (Charles D. Hamel, of Washington, D. C., Frank M. Gilliland, of Memphis, Tenn., and Hamel, Park & Saunders and Edward M. Woolf, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Prior to January 26, 1920, respondent owned and operated a sawmill and timber properties in Panola county, Miss. On the date mentioned it entered into a contract for the sale of the sawmill and equipment for the base price of $225,000, payable, $25,000 on the signing of the contract and $50,000 on delivery of warranty deeds, and by the delivery of three notes respectively for $25,000, $50,000, and $75,000, and maturing six months, one year, and two years from date. Obviously, a sawmill has value in excess of what may be obtained for it as salvage only if sufficient timber is available to permit its operation. In the negotiations leading up to the contract respondent represented to the purchasers that it controlled an available supply of logs to the estimated amount of between forty million and sixty million feet. Accordingly, and as an integral part of the contract of sale, the respondent agreed to de-

liver to the purchasers, or their assignees, a minimum of forty million feet of logs, deliverable at not less than fourteen million feet, nor more than eighteen million feet, per annum, at prices fixed in the agreement; provided that a "premium" of $2,500 should be paid by the purchasers for each million feet delivered in excess of the minimum of forty million feet, and a "penalty" should be paid by the respondent in the amount of $10 per thousand feet for each and every one million feet less than such minimum.

At this time the sawmill had a depreciated value of $159,721.20. Upon audit of the respondent's tax return for the year 1920 the commissioner added to the respondent's income the sum of $65,278.80 as profit on this sale, this sum being the difference between the base sale price of $225,000 and the depreciated value of the property. Upon appeal to the Board of Tax Appeals it was held that the contract was entire and indivisible, embracing a single transaction, that as such it was a long-term contract within the meaning of Article 36 of Treasury Regulations 45, that the true amount of the purchase price, and therefore the profit resulting from the sale could not be ascertained until it was definitely known whether the respondent was to receive a premium or pay a penalty, that a penalty was in fact paid in the sum of $32,208.49 as of September 19, 1923, and that the net profit resulting from the sale, $33,070.31, was properly allocated to the year 1923, rather than to the year 1920. A redetermination followed and the commissioner thereupon filed the present petition for review.

■ We have no difficulty in reaching the conclusion reached by the Board of Tax Appeals that the contract was entire and indivisible. As very pertinently remarked in the opinion of the board, the respondent would not have sold the timber without the mill, nor would the purchasers have bought the mill unless they could also have purchased the timber. The mill and the timber were not only related in the transaction, but they were interdependent and inseparable. "Covenants are to be considered dependent, or independent, according to the intention of the parties, which is to be deduced from the whole instrument" (Philadelphia W. & B. R. Co. v. Howard, 13 How. 307, 339, 14 L. Ed. 157; Pollak v. Brush Electric Association, 128 U. S. 446, 455, 9 S. Ct. 119, 32 L. Ed. 474), and we think that it is clear, even without recourse to extrinsic evidence, that the price to be paid for the mill property was intended to be graduated in accordance with the

quantity of timber thereafter to be supplied. Each thousand feet of logs passing through the mill could reasonably bear a portion of the plant depreciation which inevitably was being produced by the exhaustion of the timber supply. That the parties elected to express their purpose in the form of provision for premium or penalty, depending upon the quantity of timber supplied, is, we think, immaterial, for our construction of the written instrument as a whole conforms to the findings of fact by the board, that payment of the base purchase price was expressly conditioned upon delivery of the minimum of forty million feet of timber, and that the two agreements were dependent and inseparable. Cf. Manhattan Life Ins. Co. v. Prussian Life Ins. Co., 296 F. 39 (C. C. A. 2): Obear-Nester Glass Co. v. Lax & Shaw, Ltd., 11 F.(2d) 240 (C. C. A. 8).

Of the total purchase price, although the whole of it was represented by cash paid or notes given, only $100,000 was paid in cash during 1920, $50,000 during 1921, and the remaining $75,000 either late in 1922 or early in 1923; the evidence and findings of fact upon this point being indefinite. The respondent kept its books upon the accrual basis, and petitioner contends that the transaction was closed and the obligation arose to accrue the profit as income immediately upon the giving of the deed for the property and the cash and notes for the purchase price, citing and principally relying upon Lucas v. North Texas Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383; Vang v. Lewellyn, 35 F.(2d) 283 (C. C. A. 3); Highland Milk Condensing Co. v. Phillips, 34 F.(2d) 777 (C. C. A. 3), certiorari denied 280 U. S. 608, 50 S. Ct. 158, 74 L. Ed. 652. We do not regard these authorities as having the compelling force attributed to them by petitioner, for each involved a transaction definitely closed in the year for which the tax was levied, not a pending and contingent right.

■ It must be conceded that if a corporate taxpayer receives, or accrues upon its books, definitely ascertained earnings, under a claim of right and without restriction as to future disposition, it is taxable thereon even though it may still be claimed that the taxpayer was not then lawfully entitled to receive the money, and even though it may thereafter be adjudged liable to restore the whole or a part of the amount received. North American Oil Consolidated v. Burnet, Commissioner, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197 (May 23, 1932); Board v.

**84**

Commissioner, 51 F.(2d) 73, 75, 76 (C. C. A. 6). Such, also, were the cases of Vang v. Lewellyn and Highland Milk Condensing Co. v. Phillips, supra. Income taxes are properly assessed upon the basis of annual returns (Burnet v. Sanford & Brooks Co., supra); but "generally speaking, the income tax law is concerned only with realized losses, as with realized gains" (Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538); and if income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during that year, as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated. This is the true and full effect of the decisions in Lucas v. North Texas Co., supra; Burnet v. Sanford & Brooks Co., supra; and North American Oil Consolidated v. Burnet, supra.

The same general rule applies, we think, to losses or expenses claimed as deductions. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; United States v. S. S. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262; Lucas v. American Code Co., supra. In each of these cases it was held that the loss could be claimed only in that year in which it was in fact "sustained"; that is, in which the obligation to pay or charge upon its books became definitely fixed. As to both income and deductions it is the fixation of the rights of the parties that is controlling (Compare, MacLaughlin v. Alliance Ins. Co., 286 U. S. 244, 52 S. Ct. 538, 76 L. Ed. 1083 [May 16, 1932]), and we see no legal distinction between a case where such fixation of rights is postponed by litigation, as in Burnet v. Sanford & Brooks Co., supra; Lucas v. American Code Co., supra, and North American Oil Consolidated v. Burnet, and those in which a none the less effective postponement results from the existence of some other possibility or contingency, as in Lewellyn v. Electric Reduction Co., supra; Lucas v. North Texas Co., supra, and Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143.

■ It is urged that the full purchase price was actually paid, in cash and notes, and that the notes had an ascertainable market value, so that the respondent must be charged with receipt of the entire purchase price in 1920 notwithstanding subsequent developments might require the return of a part of such payment. We regard the giving of the notes, not as the final fixation of the rights of the parties—the unconditional payment of the purchase price—but merely as the method of accounting adopted by the parties and under which the right to adjustment, by which the true purchase price would ultimately be determined, still remained. The argument here made is the same as was urged without avail in Burnet v. Logan, supra, and we cannot hold that, in applying a "practical test" to the case, the taxpayer should return "as income an amount which it might never receive." The transaction must truly be a closed one, in the practical acceptance of the term, in order that there may be even a constructive receipt of profits.

Concurring, as we do, in the opinion of the Board of Tax Appeals, that the contract in question was an entire and indivisible one, that the transaction was not closed until the year 1923, and that until that time the amount of the purchase price was not definitely ascertainable, fixed, or liquidated, and in view of the principles above announced, it becomes unnecessary to determine whether such contract was properly considered a "long-term" contract under Article 36 of Treasury Regulations 45, or whether taxes were properly assessed upon this hypothesis.

■■ It is also contended that the Board of Tax Appeals erred in permitting a witness to answer the question: "Can you say how the parties arrived at the prices stated as the consideration in this contract?" A petition to review an order of the Board of Tax Appeals is an original proceeding authorized by statute, and not an appeal or error proceeding as from an inferior court. We are of the opinion that it is always permissible to offer extraneous evidence to show the circumstances and conditions surrounding the parties at the time the contract was made and to put the court, as far as may be, in the position of such parties (cf. Sawyer v. Eaton, 293 F. 898 [C. C. A. 1]); but were this principle not applied we are still of the opinion that error in the admission or rejection of evidence, according to strict principles of law, would not necessarily invalidate the decision of an administrative tribunal, and that it did not do so in this instance. The general intent of the parties to this contract is obvious from a reading of the contract itself without the aid of the testimony complained of.

Lastly, it is contended by the petitioner that notwithstanding the contract may be regarded as entire and indivisible in respect

of the sale of the sawmill and the payment of premium or penalty in connection with the quantity of logs delivered, any profits resulting from the logging operations as such must be allocated to the years in which the deliveries were made and the payments received. Doubtless this is a sound contention, for the periodic delivery of such logs became an integral part of respondent's business for the years involved, and had no direct connection with the price to be paid for the sawmill; but the record is wholly insufficient for us to say that this course was not followed. The proposed redeterminations filed by both the petitioner and the respondent after promulgation of the decision of the board were in complete agreement. The details upon which that redetermination was founded, except in so far as it allocated profits from the sale of the sawmill to the year 1923, do not appear in the record. It must therefore be assumed, in the absence of a showing to the contrary, that these profits, if any, were taxed in the appropriate years. Technically, the only question for our decision is whether the Board of Tax Appeals was right in holding that the profit derived from the sale of the sawmill could not be allocated to the year 1920, and in this finding we concur.

The decision of the Board of Tax Appeals is affirmed.