**HELVERING, Commissioner of Internal Revenue, v. ST. LOUIS SOUTHWESTERN RY. CO.**

**ST. LOUIS SOUTHWESTERN RY. CO. v. HELVERING, Commissioner of Internal Revenue.**

Nos. 9641, 9645.

Circuit Court of Appeals, Eighth Circuit.

Aug. 17, 1933.

Rehearing Denied Oct. 12, 1933.

WOODROUGH, Circuit Judge, dissenting.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Claude W. Dudley, of Washington, D. C. (Emmet T. Carter, of St. Louis, Mo., on the brief), for St. Louis Southwestern Ry. Co.

Before STONE and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge.

No. 9641 is a petition by the Commissioner to review a determination by the Board of Tax Appeals that the sum of $2,461,397.23, representing a part of compensation to respondent during federal control, should be allocated to the years 1918, 1919, and the first two months of 1920, instead of being regarded as income for the year 1923. Case No. 9645 is a petition for review by the railway company from a companion decision al-

locating $192,967.54, representing rental interest on betterments and additions. The purpose of this petition of the company is purely protective to avoid double taxation in case the determination of the Board of Tax Appeals in 9641 is reversed. If 9641 is affirmed, it will govern 9645.

The main controversy is within narrow limits and is whether the sum involved "accrued" in the years to which it was allocated, or in the year 1923, when the amount was first determined. The governing facts are as follows. On January 1, 1918, the government took over control of respondent and retained such until the end of February, 1920. The amount certified by the Interstate Commerce Commission to the President as representing the annual income during the test period, provided in the Federal Control Act (40 Stat. 451), was $3,905,514.29. Before this amount had been determined however, and on November 26, 1918, the railway made claim for compensation, of $5,339,109.94 per annum, which it knew was in excess of what the test period would show. It based this claim of reasonable compensation over the test period upon recent expenditures for additions and betterments, additional facilities provided, as well as having made large expenditures for new and improved types of equipment, and other unusual conditions prevailing during the test period which would make, it contended, the income in the test period an unfair measure of its compensation. On January 1, 1922, it made another claim which covered the entire period, then past, of federal occupation and totaled $12,820,701.66. After extended negotiations, the railway and the government finally agreed upon an annual compensation of $5,000,000 during the period of occupation. This agreement was made July 20, 1923. The total resulting from this agreement exceeded the estimate of the test period, during the time of occupation, by the more than $2,000,000 involved in this main controversy.

During this entire time there was never any question of the liability of the government to pay a reasonable compensation, but the entire controversy was over the amount to be paid. Apparently, the government admitted and was contending for the result shown by the test period earnings so that the controversy really was over any excess beyond such allowance. The taxpayer's books were kept upon the accrual basis. The government contends that this two million odd excess cannot be regarded as accruing before it was definitely determined by the agreement of July 20, 1923, and, therefore, it

should be regarded as accrued income for the year 1923. The respondent contends that the Federal Control Act contemplated annual compensation during the period of occupation, and as the right to the compensation accrued during each of the years of occupation and as this excess is merely a part of that compensation, it should be regarded as having accrued in those years, and; therefore, to be allocated to them as was determined by the Board. Stated in general terms, the legal question is whether, where there is no contest over liability, and where the amount of that liability does not depend upon future events or contingencies, the income accrues during the period the liability became fixed, although the exact amount is not determined until later.

This same matter has been directly ruled, in accordance with the determination here of the Board, in Commissioner v. Midland Valley R. Co., 57 F.(2d) 1042 (C. C. A. 10), and Commissioner v. Old Dominion Steamship Co., 47 F.(2d) 148 (C. C. A. 2). Also, it receives some support from the reasoning in Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 52 S. Ct. 529, 76 L. Ed. 1111.

There are some cases which contain expressions to the effect that it is necessary for the amount to be liquidated before the item can "accrue," either as income or deduction, but such expressions occur in connection with some dispute as to any liability or where the liability or the amount of liability is contingent upon future happenings. Such decisions are North American Oil Consolidated v. Burnet, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197; Lucas v. North Texas Lumber Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Block & Kohner Mercantile Co. v. United States, 37 F. (2d) 877 (C. C. A. 8); Commissioner v. R. J. Darnell, Inc., 60 F.(2d) 82 (C. C. A. 6); Lucas v. Providence Coal Min. Co., 60 F. (2d) 86 (C. C. A. 6); J. N. Pharr & Sons v. Commissioner, 56 F.(2d) 832 (C. C. A. 5); Commissioner v. Southeastern Express Co., 56 F.(2d) 600 (C. C. A. 5); Bauer Bros. Co. v. Commissioner, 46 F.(2d) 874 (C. C. A. 6), certiorari denied Bauer Bros. Co. v. Burnet, 283 U. S. 850, 51 S. Ct. 560, 75 L. Ed. 1458; Price Iron & Steel Co. v. Burnet, 60 App. D. C. 3, 45 F.(2d) 921; Ewing-Thomas Converting Co. v. McCaughn, 43 F. (2d) 503 (C. C. A. 3), certiorari denied 282 U. S. 897, 51 S. Ct. 181, 75 L. Ed. 790; Vang v. Lewellyn, 35 F.(2d) 283 (C. C. A. 3); Highland Milk Condensing Co. v. Phil-

lips, 34 F.(2d) 777 (C. C. A. 3), certiorari denied 280 U. S. 608, 50 S. Ct. 158, 74 L. Ed. 652; Naitove & Co. v. Commissioner, 59 App. D. C. 53, 32 F.(2d) 949, certiorari denied Naitove & Co. v. Lucas, 280 U. S. 582, 50 S. Ct. 34, 74 L. Ed. 632; Desco Corp. v. United States, 55 F.(2d) 411 (D. C. Del.), and John R. Lankenau Co. v. United States, 46 F.(2d) 158 (D. C. Mass.).

The situation here is essentially different from those involved in the cases in the next preceding paragraph. The Midland Valley R. Co. and the Old Dominion Steamship Company Cases, supra, are directly in point. We are satisfied with the reasoning of those two opinions and see no reason to repeat the substance thereof here. On the same reasoning, we think the Board correctly determined this matter.

Appeal No. 9645 is an appeal by the taxpayer from a decision in its favor. The purpose of this appeal is purely protective to take care of the contingency of a reversal of No. 9641. If No. 9641 had been reversed, then the income found taxable by the Board for 1920 would have been included also in the entire income for 1923, thus resulting in double taxation as to the above income for 1920. This is the situation guarded against by No. 9645. Automatically, the affirmance of the Board leaves the tax for 1920 undisturbed and the company has no desire to so disturb it.

However, the Commissioner contends that the amount of this tax for 1920 is erroneous and, irrespective of the disposition of No. 9641, the case should be remanded to the Board for correction as to this matter. Such matter is not covered by any assignment of error made by the Commissioner, and we see no sufficient reason for considering the matter, although unassigned. An affirmative reason for not noticing this unassigned error is that the findings of the Board show an agreement between the parties as to the tax for 1920, if the entire income is not taxable in 1923.

The petitions to review in each case will be dismissed.

WOODROUGH, Circuit Judge (dissenting).

As I view the record in this case the majority conclusion means that the railroad company will not have to pay any income taxes upon $2,461,397.23 of income which it received in 1923. It is clear that it got the income and the same was taxable against it, but it is found to follow from the way it

keeps its books on the accrual basis that it can accrue the income which it got in 1923 back to years beyond the period of the statute of limitations, and so escape paying any income tax on account thereof.

Its properties were taken over by the government for the war and so operated in 1918, 1919, and two months of 1920. As compensation to the railroad for the use of the properties the Federal Control Act provided for annual payments at the so-called "standard return rate," but, at the same time, empowered the President to agree upon whatever additional amount he found to be just. The company also had its constitutional rights to judicial determination of what was just. The railroad at all times reserved its right to judicial determination of its just compensation, but prosecuted negotiations with the government for several years and consummated amicable settlement in 1923. The amount then paid by the government being the above-stated sum of $2,461,397.23 in excess of the standard return.

As stated in the majority opinion, it would seem that the government admitted and was contending for the amount of the standard return as being just compensation to this railroad and there was controversy over the excess. Such controversy obviously made it impossible for the taxpayer to return any specific income represented by any such excess for taxation, and neither could the Commissioner determine a deficiency in regard to it. The taxpayer merely had an unadjusted claim against the government. That being so, there was actually no income until the adjustment was made and the money received. When it was received, it was income on which tax ought to be paid.

It is true the courts hold that, in the cases of railroads which made adjustment and were paid in excess of the standard return so shortly after the period of federal control that the Commissioner still had jurisdiction to review the returns for those years 1918, 1919, and 1920, the income derived from the settlement could be and ought to be accrued back and allocated to those years. So, in the Second Circuit, a railroad company was permitted to prorate (or accrue) its excess income from government operation above the standard return over the three years of war control and to pay the tax on such excess income so allocated. But, it is apparent from the court's opinion that the whole period covered by the allocation was within the statutory period of tax administration, so there was no question of a tax not being collected, and that this consideration weighed with the

court is clearly reflected in the last paragraph of the opinion: "No practical difficulties in the administration of the taxing acts will occur by permitting the accrual of just compensation of the carriers as income of the years of federal control in which earned. The Commissioner has five years after the return is filed to audit the returns for the years in question. Section 250 (d), Revenue Act of 1918 (40 Stat. 1083). The amount of just compensation was determined in 1921, and at that time the returns of 1918, 1919, and 1920 were still subject to review. The determination is approved." Commissioner v. Old Dominion S. S. Co. (C. C. A.) 47 F. (2d) 148, 150.

The Tenth Circuit later followed the same rule under the same circumstances and permitted a railroad company to pay its tax on the excess income allocated the same way. Commissioner v. Midland Valley R. Co. (C. C. A.) 57 F.(2d) 1042.

There was reasoning by the Supreme Court in Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 52 S. Ct. 529, 76 L. Ed. 1111, not discordant.

Neither of these cases, however, proceed upon any general idea that because a claim against the government for expropriation of private properties in war time is a just claim that, therefore, the accrual of the mere claim is the same thing as the actual receipt of income. They meant to hold that, where the whole period of the accrual of the claim and the realization thereon was within the jurisdiction of the tax administration, it more nearly conformed to the intent of Congress to spread the income for taxing purposes as indicated. It was not within the purview of either opinion that the taxpayer could defeat its just tax altogether by the mere accrual fiction of accountancy. Section 212 (b) of the Revenue Act of 1918 (see 26 US CA § 953 (b), provides that, if the method of accounting employed by a taxpayer does not reflect the income clearly, computation must be made in such a manner as to do so ("in the opinion of the Commissioner"). The plain meaning is that, if a taxpayer actually gets a taxable income, as this taxpayer did, he cannot avoid the tax by any mere system of bookkeeping, no matter what the system is.

Much of the brief is devoted to the argument that there will be discrimination if railroads who effected a prompt settlement are permitted to accrue the income back to the war operation period and roads whose settlements were delayed are not. That is true,

but certainly, if the latter roads are allowed to evade the tax altogether, the discrimination is worse. Doubtless the payment of many just war claims has been and will be delayed, but the result need not be to extinguish the income tax laws in relation thereto. The sensible course is to recognize the flexibility of the tax statute while the administration conformable to the intent and spirit is within the time limits of the Tax Commissioner's jurisdiction. But if adjustment and payment of a war claim and resultant taxable income come too late for the exercise of such administrative jurisdiction, then the income tax law should be enforced as written.

It was contended in this case, in oral argument at the bar, that our record from the Board of Tax Appeals does not affirmatively show avoidance of this tax by the railroad company. Of course no such direct statement is made in the record, but there is no other rational inference. The only year of war control within the statute limitation of tax administration was the year 1920. The bookkeeping for that year was before the Board and shows no accounting of any part of this taxable income, and the claims of the railroad against the government being unadjusted, no accountant could enter the true amount on his books. Neither is it to be imagined that he either could or did in the preceding years of 1918 or 1919. By accruing the income back to 1918, 1919, and 1920, as has been done by the Board of Tax Appeals, the government does get an insignificant part of its tax for two months of 1920, but I conclude that the whole tax on the $2,461,397.23 of income received in 1923 through the settlement of the controverted claim for excess compensation ought to be paid, and the case reversed, with such direction.