ESTATE OF B. F. WHITAKER, DECEASED, FIRST NATIONAL BANK IN DALLAS AND LANHAM CROLEY, CO-EXECUTORS, AND FLORENCE D. WHITAKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51381. Filed November 29, 1956.

*Llewellyn A. Luce, Esq.*, and *Lanham Croley, Esq.*, for the petitioners.

*Frank C. Allen, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:*

## Issue 1.

The first question presented is whether breeding fees received in the year of breeding are income in that year or in the following year when the foal is born. (Mares were bred in the spring and foals were born 11 months later, in the following year.)

The respondent determined that the fees are income in the year received on the ground that the petitioner was on the cash basis or, on the alternative ground, that the petitioner received the fees under a "claim of right" and they are income in the year received regardless of the basis of accounting used. The petitioner contends he has consistently reported the breeding fees on the completed contract basis; that the contract was not completed until the foal was born alive. because he guaranteed a live foal and was required to repay any fee if the foal was not born alive; and that the completed contract method clearly reflects his income.

We think the record supports the respondent's determination that the breeding fees received in the year of breeding are income in that year rather than in the following year when the foal was born.

Section 42 of the Internal Revenue Code of 1939 provides:

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *

If the petitioner was on the cash basis the fees would be income in the year received. However, the petitioner contends that the method he used is one that is permissible under section 41, since it clearly reflects income. The petitioners, in their brief, argue:

Clearly this taxpayer had a right under the established law to return his income on a completed contract basis which, we submit, clearly reflected his income. The taxpayer, since 1946 (when his breeding activities began), has consistently adhered to the completed contract basis of reporting the breeding fee income. The Commissioner now seeks to destroy the taxpayers' right to return the income on the completed contract basis by erroneously determining that the taxpayer kept his books and filed his returns on the cash receipts and disbursements basis and that the completed contract basis did not correctly reflect income.

It is true that Treasury regulations do provide in certain situations for reporting income on the long-term contract basis. It seems perfectly clear, however, that petitioners' income from breeding con-

tracts does not come within the provisions of these regulations. In Regulations 111, the long-term contracts regulations are as follows:

SEC. 29.42–4. LONG-TERM CONTRACTS.—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used in this section the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon either of the following bases:

\* \* \* \* \* \* \*

(b) Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

A taxpayer may change his method of accounting to accord with paragraph (a) or (b) of this section only after permission is secured from the Commissioner as provided in section 29.41–2.

It is obvious that petitioners' income from breeding fees does not come within the purview of the foregoing regulations. The regulations are not intended to cover the treatment of the kind of income here involved.

The petitioner's evidence leaves something to be desired with regard to the use of one method consistently; but assuming that he consistently reported the fees in the year the foals were born, we do not think that that method clearly reflected his income. Therefore, it cannot be used.

The petitioner's stallion performed the breeding service in the spring of the year. After that service was performed the petitioner's performance of the contract was completed. The fees were earned at that time. In addition, he received the fees in question in the same year when it was determined the mares were in foal. All that remained was a contingent liability; if the foal was not born alive the fee would have to be refunded. It is well established that such a contingency is not sufficient to defer the reporting of income. See *Brown* v. *Helvering*, 291 U. S. 193 (1934); *Vang* v. *Lewellyn*, (C. A. 3, 1929) 35 F. 2d 283; *S. B. Heininger*, 47 B. T. A. 95, 100 (1942), reversed on another issue (C. A. 7) 133 F. 2d 567, affd. 320 U. S. 467 (1943).

We cannot see how a method of accounting that defers the reporting of fees as income to a period subsequent to that period in which the service is completed, the fees earned, and the fees received could clearly reflect income. The petitioner's accounting method is not justified by merely calling the contract complete at the time the contingency is removed.

One of the cases, among others, relied upon by petitioners in support of their contention is *Schuessler* v. *Commissioner*, (C. A. 5) 230 F. 2d 722, reversing 24 T. C. 247. In that case, the taxpayers had set up a reserve of $13,000 to represent their estimated cost of carrying out a guarantee given with each of the furnaces sold by them during the year to turn the furnace on and off each year for 5 years. The Tax Court had disallowed the accrued reserve as a deduction in the taxable year. The Fifth Circuit reversed the Tax Court with direction to enter judgment for the taxpayers. It is manifest that that case is not in point with the facts which we have in the instant case. We do not have here a reserve set up to take care of future expenses which the taxpayer was obligated to pay under the terms of the contract. In the instant case, we have no reserve set up at all to take care of future expenses. We have here merely a contract which obligated the taxpayer to make certain refunds in case a contingency happened, namely, the birth of a dead foal. This contingency only happened occasionally and the return of fees which petitioner had to make under the terms of the contract were few in number, as the evidence shows.

Therefore, to sum up, it seems to us that the fees in question were clearly income in the year of breeding and receipt; this is true whether petitioners kept their breeding fees records on the cash or the accrual basis. The respondent's determination is, therefore, sustained.

## *Issue 2.*

Petitioner's racehorse, Baby Jeanne, bowed a tendon in 1950 and the petitioner sold her for $1,000, after he determined that she was valueless as a racehorse. The respondent allowed a normal depreciation deduction on a straight-line basis for that year and determined that the difference between the adjusted basis and the sales price was a capital loss. Respondent relies upon section 117 (a) (5) and (j) (1), Internal Revenue Code of 1939, printed in the margin.[2] The petitioner contends that he is entitled to accelerated depreciation in 1950 in the amount of the difference between the adjusted basis and

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

\* \* \* \* \* \*

(5) LONG-TERM CAPITAL LOSS.—The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such loss is taken into account in computing net income;

\* \* \* \* \* \*

(8) NET LONG-TERM CAPITAL GAIN.—The term "net long-term capital gain" means the excess of long-term capital gains for the taxable year over the long-term capital losses for such year;

\* \* \* \* \* \*

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, \* \* \*

the sales price. The practical question is whether the petitioner can deduct his loss in full or in part. The method used by petitioner would deduct it in full.

Section 23, Internal Revenue Code of 1939, provides that in computing net income there shall be allowed as deductions:

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

The proper allowance for depreciation is the amount which should be set aside in each taxable year in accordance with a reasonably consistent plan whereby the aggregate of such amounts plus the salvage value will at the end of the useful life of the property be equal to the cost or other basis of the property. Regs. 111, sec. 29.24 (1)–1.

The petitioner computed the depreciation on Baby Jeanne on a straight-line basis. To be entitled to additional depreciation when computing it on a straight-line basis, the petitioner must show that additional exhaustion, wear, and tear have shortened the previously estimated useful life of the asset. *Copifyer Lithograph Corporation*, 12 T. C. 728 (1949). The petitioner has shown the useful life of Baby Jeanne as a racehorse had been shortened. But the useful life had been shortened by an accidental injury, not by depreciation, i. e., exhaustion, wear, and tear. Petitioner's loss, as respondent has determined, is a capital loss, deductible as provided in section 117 (j) of the 1939 Code.

Accordingly, the respondent's determination is sustained.

*Decision will be entered for the respondent.*