## JOHN H. FARISH & CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit.
February 20, 1929.

No. 349.

Chase Morsey, of St. Louis, Mo., for petitioners.

John Vaughan Groner, of Norfolk, Va. (Mabel Walker Willebrandt, Asst. Atty. Gen., Barham R. Gary, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, Irwin R. Blaisdell, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

KENYON, Circuit Judge. This is an appeal from a decision of the United States Board of Tax Appeals. Petitioner, herein called appellant, was engaged in the city of St. Louis in the real estate business, which consisted principally in collecting rents for clients. He had in his employ for many years a person acting as cashier and bookkeeper, whose duty was to deposit the money collected as rents in the bank, where an account covering rent collections solely was kept under the name of appellant, he keeping a separate account for his individual funds. This cashier and bookkeeper, instead of depositing all of the rents collected, wrongfully appropriated to his own use a very large amount thereof, and these appropriations were made during a period of years prior to 1921.

In March of that year appellant discovered that a shortage of $57,000 existed. Accountants were placed upon the books and they estimated that the cashier and bookkeeper had embezzled $10,000 during the year 1919, $10,000 during the year 1920, and $37,000 during the years previous to 1919. The method employed by the cashier and bookkeeper was to take various amounts of money from different rent collections, entering the same on the books to the credit of the client, drawing checks to the clients which appellant would sign, and then withholding the checks until he had made other collections sufficient to care for the same at the bank.

At the time of the discovery of the shortage in March, 1921, checks unmailed to clients amounted to $57,000, and appellant to make good borrowed the necessary amount, placed it in the bank account, and allowed the checks to clear. After this discovery of the cashier's shortage he was charged with $57,000 on the books of appellant, and afterwards credited with $5,930.08, the proceeds of certain assets which he turned over to the appellant, consisting of an automobile, a second mortgage on residence, and a diamond ring, leaving a balance owing to appellant by said cashier of $51,069.92. This sum appellant in filing his income tax return for the year 1921 sought to deduct as a loss occurring during that year. The cashier and bookkeeper represented to appellant that he would pay the balance largely from proceeds of an estate coming to him. Later in the year 1921 appellant concluded it would be impossible to collect more, and charged off as worthless the account against the cashier on his books.

The Commissioner of Internal Revenue held that petitioner sustained no loss deductible in the year 1921, but allowed appellant a deduction of $10,000 for each of the years 1919 and 1920, which was affirmed by the Board of Tax Appeals, thus recognizing there was some justice in appellant's claim.

Appellant claims the right to a deduction

in the year 1921, either under paragraph 4 of section 214a of the Revenue Act of 1921 (42 Stat. 239), which is as follows: "(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business"; or under paragraph 7 of said section, which is as follows: "Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

The real questions are: First. Was the loss of appellant sustained during the taxable year of 1921? Second. Does the loss come under paragraph 7 as a bad debt ascertained to be worthless and charged off in the year 1921? If deductible either under paragraph 4 or 7 of section 214a, there would be no tax due.

When was the loss sustained? Appellant says when it had to borrow the money and make the checks good. Respondent says whenever the cashier took the money. The Board of Tax Appeals said "the loss was sustained when the theft occurred, although the defendant did not know at the time of the depletion of its assets." The board seemed to rely on the case of United States v. C., C., C. & St. L. Ry. Co., an unreported opinion by the United States District Court of the Southern District of Ohio, dealing with deductions under the corporation excise tax law of 1919. In that case the embezzlement was of money belonging to the railway company, and the court said that as each embezzlement occurred the defendant was poorer to the extent of it; that it underwent the loss of that much of its assets. That was true, because its own money was taken. Some of its own assets passed away, but it is not true under the facts in this case. A liability was created as each embezzlement occurred. That was not, however, a loss, and such might never have been enforced against the appellant. The moneys embezzled by the cashier were not the moneys of the appellant. They were trust funds, and belonged to his clients. None of his property was taken. He had the same assets after each embezzlement as he had before. His assets were not depleted, and he was out nothing, until he was called upon in 1921 to make good the defalcations of his cashier. The error of the board was in holding that appellant sustained a loss each time the cashier misappropriated money. As we have pointed out, he did not sustain such loss at those times, because the mon-

ey taken was not his money. This distinguishes this case from the Ohio case relied on by respondent.

The Board itself has recognized this distinction in two decisions handed down since the decision in this case. One is Israel T. Deyo v. Commissioner, No. 3251, Docket No. 10288. In that case petitioner was a lawyer. His partner embezzled some $50,000 worth of securities belonging to clients in possession of the firm. Petitioner had to make good the loss, and did so in 1913. It had been the practice of the firm to invest money belonging to its clients and keep the securities purchased for them. Petitioner's partner absconded, and it was discovered that the clients' securities deposited with petitioner's firm to the extent of some $34,000 had been converted into cash, and that certain bonds belonging to an estate were missing. There were court proceedings in the efforts of clients to collect, and finally settlement was made by payment of the sum of $25,000. Petitioner sought an income tax deduction for the year 1920 on the ground of loss sustained during that year. The Board of Tax Appeals in its opinion emphasized the fact that the securities which were taken belonged, not to the petitioner, but to his clients, and said: "The petitioner's loss was not sustained at the time of the wrongdoing, but only at the time when he was required to pay out money."

In the case of Peter Frees, Jr., v. Commissioner, Decision No. 4125, Docket No. 11307, it appears that petitioner, in connection with his drug store, operated a substation post office in New York City. During 1918 he received subscriptions and payments for Liberty Bonds. These were handled by girl cashiers, who made remittances daily to the Liberty Loan Committee. It seems that they embezzled some of the money. The Liberty Loan Committee sued petitioner, and the suit was settled by the payment of $1,250. The loss by embezzlement was prior to 1920. He asked deduction based on loss during the taxable year 1920, when the embezzlement was discovered. The board said in its opinion: "The respondent does not deny that a loss was sustained, and admits that the money embezzled by the two employees of the petitioner belonged to the Liberty Loan Committee, for whose account the funds had been collected. It is apparent that, since the money misappropriated belonged to the Liberty Loan Committee, the petitioner did not suffer any loss at the time of the wrongdoing, but only at the time he was required to make good any difference between collections made

from subscribers and remittances to the committee. See Israel T. Deyo v. Commissioner of Internal Revenue, Dec. 3251, 9 B. T. A. 900."

Suppose the cashier in the present case, under some arrangement agreeable to the clients of appellant, had accepted for the rents Liberty Bonds or other securities. If the cashier then had appropriated these securities or turned them into cash and taken the money the case would be exactly in point with the Deyo and Frees Cases. There is no substantial difference in principle, however, between the wrongful appropriation of securities and the embezzlement of moneys. We think the decisions in the Frees Case and the Deyo Case cannot be harmonized with the decision of the board in the case at bar. We entertain no doubt that appellant sustained the loss when he was compelled to make good to his clients the amounts of money which the cashier had embezzled. As this loss was sustained during the taxable year 1921 it was entitled to a deduction therefor.

We think also that appellant could have claimed deduction under paragraph 7 of section 214a, hereinbefore referred to. Appellee insists that the transaction cannot be considered as a debt, that the term "debt" as used in section 214a, paragraph 7, applies only to debts within the ordinary and general meaning of the word; that is, obligations voluntarily created between debtor and creditor, and that that is the meaning that must be given in construing the federal tax laws. Assuming this to be true, but not so holding, what is the situation presented? When appellant paid this sum of $57,000 to cover the checks to his clients the cashier was charged with it on the books as a debt. The testimony of witness Farish shows that the cashier told him he would be in position to pay him $30,000 from an estate he was inheriting, and that he would pay back the entire amount; that he turned over to him an automobile, a second mortgage on his residence and a diamond ring, out of which property appellant realized $5,930.08, which he credited on the account. It is apparent that appellant did not undertake to prosecute the cashier criminally, but entered into an arrangement by which the embezzlements should be charged on the books as a debt from the cashier.

Whatever this transaction might have been technically before that arrangement, it then was considered, and apparently agreed to by the cashier and appellant, that it should constitute a debt. This was not a mere device to thwart or evade the federal tax laws, but apparently was born of a desire on appellant's part in good faith to get the money owing him from the cashier rather than to prosecute him. When he made payment to his clients of the amounts the cashier had appropriated the cashier was placed in the position of owing him the amount which he had been compelled to so pay, and it is a fair inference from the record that the position of debtor and creditor was entered into between them. This sum was carried as a debt of the cashier, but later in the year found to be worthless and marked off. We do not see why the situation is not brought under paragraph 7 of section 214a, even under respondent's definition of the term "debt" under the federal tax laws. On either of the grounds we have pointed out the board would have been justified in allowing the reduction claimed by appellant, and we think erred in not doing so.

We are satisfied that the judgment entered by the Board of Tax Appeals should be set aside and the case remanded for judgment in harmony with this opinion; and it is so ordered.

Reversed.