## DOUGLAS COUNTY LIGHT & WATER CO. v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 5863.

Circuit Court of Appeals, Ninth Circuit.

Oct. 6, 1930.

Robert T. Jacob and Alfred P. Dobson, both of Portland, Or., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Stanley Suydam and Prew Savoy, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for respondent.

*Rehearing denied December 1, 1930.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

The following opinion, prepared by DIETRICH, Circuit Judge, is adopted as the opinion of the court by WILBUR, Circuit Judge, and WEBSTER, District Judge.

PER CURIAM.

■ This is an appeal from an order of the Board of Tax Appeals sustaining the action of respondent in disallowing a claimed deduction in appellant's tax return for 1922 of $16,000, as a loss or on account of a bad debt. The evidence is not brought up, but only the board's findings of fact. From these it appears that in 1912, upon the purchase by it of certain light and water systems, appellant executed bonds in the amount of $600,000, secured by a second mortgage or trust deed upon all its properties. One Welch, who had promoted the enterprise, became its president and acted in that capacity until 1915. In 1916 the secretary of the company discovered that $26,000 of this issue of bonds, which had been retained in the treasury, were missing and unaccounted for, and, upon investigation, it developed that $6,000 thereof had been pledged to a bank to secure a loan made by the bank to the company, and that the other $20,000 had been appropriated by Welch to his own use.

"These facts were reported to the directors, who at once took the matter up with Welch in an endeavor to obtain restitution of the bonds or payment therefor. Welch at first agreed to obtain and return the bonds, but failed to do so, and the matter drifted along until 1921, when petitioner obtained from Welch his note for $16,000 in payment for the $20,000 of bonds, after many unsuccessful efforts to obtain a settlement. Welch was a promoter and speculator, and petitioner's officers knew very little about his financial responsibility, but expected the note to be paid and entered it on their books as an asset in 1921. It does not appear that it was returned as income.

"In 1922 Welch filed his voluntary petition in bankruptcy and was duly adjudicated a bankrupt. The note above mentioned was listed as one of his unsecured liabilities. Petitioner received nothing from the bankrupt's estate, and now claims that it ascertained said note to be worthless as the result of the bankruptcy proceedings. The note was charged off on books of account of petitioner as worthless in 1922."

We cannot accept the view, apparently regarded by the board as controlling, that

upon the misappropriation of the bonds the company necessarily and forthwith suffered a loss measured by the face value thereof. The bonds did not constitute real assets of the company, and their wrongful disposition only tended to create a possible obligation for which it received no consideration from the holders thereof. The settlement by the company with Welch and its acceptance of his note might be deemed to have operated as a confirmation of a sale or other disposition of the bonds. But however that may be, it had a valid cause of action against him by the assertion of which if he was solvent it could have protected itself against any substantial net loss. In wrongfully disposing of the bonds, he imposed an apparent obligation upon the company which it might be compelled to discharge, and, upon the other hand, he incurred an equivalent obligation to the company of the same magnitude. In other words, assuming Welch's solvency, the company's assets were approximately as valuable after as before the misappropriation. In subsequently accepting Welch's promissory note for $16,000 in full settlement, the company, in 1921, sustained or ascertained a loss of $4,000, but for that it asks no deduction. There is no ground for concluding that the note was taken from Welch in bad faith, and only when, as the result of the bankruptcy proceedings, it was shown to be worthless and was charged off, can it be said the loss initiated by the embezzlement was fully consummated. Section 234(a) of the Revenue Act of 1921 (42 Stat. 227), provides in part as follows:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"(5) Debts ascertained to be worthless and charged off within the taxable year."

Among other things, article 561, regulation 62, promulgated by the Treasury Department under authority of the Revenue Act of 1921, provides:

*"Allowable Deductions.*—In general the deductions from gross income allowed corporations are the same as allowed individuals except (exceptions not applicable here). See section 214 of the statute * * * as to losses see articles 141–147 * * *

Article 141—*"Losses.*—Losses sustained during the taxable year and not compensated for by insurance or otherwise * * * They must usually be evidenced by closed and completed transactions. * * *"

A treasury regulation has the force and effect of law unless it is in conflict with an express statutory provision. Ardsley Club v. Durey (D. C.) 40 F.(2d) 293; Union Bed & Spring Company v. Springer (C. C. A.) 39 F.(2d) 383. And in case of doubt, statutes levying taxes are construed most strictly against the government. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211.

Claimed deductions for doubtful debts or inchoate losses are not to be encouraged, and therefore the taxpayer ought not to be penalized for deferring his claim for deductions until he has in good faith resorted to reasonable measures for avoiding or minimizing a threatened loss. Owing to the tendency to lower the tax rates, postponement of such a claim works to the benefit rather than to the injury of the government.

We think the appellant's contention is fairly supported by the well-considered opinion of the Eighth Circuit Court of Appeals in John H. Farish Co. v. Commissioner, 31 F.(2d) 79, the purport of which is well stated in the second syllabus of the report, as follows: "Where bookkeeper of one engaged in real estate business misappropriated funds of clients, and employer borrowing money to make good loss charged bookkeeper with such amount and later, deciding it would be impossible to collect more from him, charged off account against bookkeeper as worthless, such loss was deductible, under Revenue Act 1921, § 214(a), par. 7 (42 Stat. 240), as worthless debt charged off within taxable year, in computing income tax." And also by Ledger Co., Inc., v. United States (Ct. Cl.) 37 F.(2d) 775, 777.

Reversed, with directions to allow the claimed deduction.