**DAYTON CO. v. COMMISSIONER OF IN-TERNAL REVENUE.**

**No. 10667.**

Circuit Court of Appeals, Eighth Circuit.

June 12, 1937.

Thomas Gallagher, of Minneapolis, Minn., for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is a petition for review by the Dayton Company, a corporation, from a redetermination of its income tax for the fiscal year beginning February 1, 1929, and ending January 31, 1930, by the Board of Tax Appeals.

The controversy involves the disallowance of two deductions claimed by petitioner. One deduction claimed is for loss on a piece of real property sold by petitioner on November 15, 1929. The other deduction is for alleged payments to an employees' pension fund. These deductions, being wholly unrelated, will be examined separately.

## I.

### Real Property Deduction.

The pertinent undisputed facts found by the Board are as follows: On August 10, 1928, petitioner purchased a plot of ground with a large residence thereon for $50,-000. At the time of purchase and for several months thereafter, it was the intention of petitioner to make certain uses of this residence in connection with its business. Later, it was determined that such uses would react unfavorably and, since the carrying charges on this property were relatively heavy, it was (in November, 1928) deemed wise to demolish the building and thus materially reduce such charges. The demolition was paid for by the materials in the building and the contractor was required to remove the foundation, to fill in

the excavation, and to leave the property in presentable condition. The demolition began early in December, 1928, and proceeded as rapidly as weather conditions allowed. By January 20, 1929, the building had been removed to the foundation and all materials of value taken away. Weather prevented removal of the foundation, filling in of the excavation, and removal of the remaining débris until during the spring of 1929. November 15, 1929, the land was sold for $12,000. Thirty-eight thousand dollars (the difference in purchase and sale prices) is claimed as a deduction for the fiscal year ending January 31, 1930.

There was never any depreciation charged nor was there any partial recovery of loss through insurance, salvage, or otherwise. The demolition was not in pursuance of any plan to replace or renew the structure or to further use the property. The books of petitioner show a profit and loss entry of $35,000 on January 31, 1929, covering this matter—it being the then judgment of the officers of the petitioner that the land was worth $15,000. However, petitioner realized only $12,000 on sale some months later. For this and prior years, petitioner returned its taxes on the accrual basis. There are no disputes as to fairness of purchase and sale prices, as to good faith of petitioner, nor as to amount of actual loss. The sole issue here is whether the loss occurred in the tax year claimed—the fiscal year beginning February 1, 1929.

The contentions of petitioner are (1) that it could not claim the deduction until sale of the property, but (2) if the deduction must be claimed in the year of demolition, such claim must be made during the year the demolition and the contract therefor were completed, which was the tax year here involved. The Commissioner's answer to the first contention is that losses are deductible within a taxable year where "fixed by an identifiable event in such year" and that this demolition was such an event. His answer to the second contention is that this event occurred during the prior tax year because therein were the decision to demolish, completion of arrangement therefor, demolition (excepting only the foundation), and treatment by petitioner through entry of loss therefrom on its books. As to the first above contention, the Board held the loss deductible in the year suffered, irrespective of sale. As to the second contention, it held that the

burden upon petitioner of overthrowing the presumptively correct determination of the Commissioner as to the year of loss had not been successfully carried.

### (a) The First Contention.

This contention presents the issue as to whether this undisputed loss must be postponed until the year of sale. This is a capital loss. The Revenue Act of 1928 (45 Stat. 791) governs. Section 23 (f) of that act (45 Stat. 799, 26 U.S.C.A. § 23 and note) allows deduction "In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise." This is the broad general provision as to deductions allowable to corporations. That it includes capital losses is further made clear by the next following subsection "(g)" (26 U.S.C.A. § 23 and note) which defines the "Basis for determining loss" thereunder to be "the same as is provided in section 113 for determining the gain or loss from the sale or other disposition of property," which is "the cost of such property." Section 113 of the act (26 U.S.C.A. § 113 note).

Here there was no compensation for this loss "by insurance or otherwise" and no question of the fact of loss or of the allowable character of such loss. The section requires allowance within the taxable year "sustained." United States Cartridge Co. v. United States, 284 U.S. 511, 520, 52 S.Ct. 243, 246, 76 L.Ed. 431. When is a deductible loss "sustained"? In discussing identical language in the Revenue Act of 1918 (40 Stat. 1057), the Supreme Court said:

"The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. New York Ins. Co. v. Edwards, 271 U.S. 109, 116, 46 S.Ct. 436, 70 L.Ed. 859; cf. Miles v. Safe Deposit Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923. But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (article 141, 144), or caused by its destruction or physical injury (article 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151)." United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 600, 71 L.Ed. 1120.

In Lucas v. American Code Co., 280 U. S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010, the court said:

"Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

From these two statements of the Supreme Court are deduced the criteria that a loss is deductible under this provision of the statute if (1) it is "fixed by identifiable events, such as * * * destruction" of the property and (2) it is "reasonably certain in fact and ascertainable in amount."[1]

---

[1] In Shoenberg v. Commissioner, 77 F. (2d) 446, 448, certiorari denied 296 U. S. 586, 56 S.Ct. 101, 80 L.Ed. 414, this court stated the rule as follows:

"The Revenue Act here involved (Act of 1928, 45 Stat. 791, 26 U.S.C.A. § 2001 et seq. [now 26 U.S.C.A. § 1 et seq., and notes]) as well as earlier and later Revenue Acts permit deductions of losses from taxable net income. It requires such losses to be 'realized' by some closed and completed 'identifiable event' (United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120) which definitely settles and determines the existence of and the amount of such loss (Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670; Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720; United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120), and it requires such losses to be actual and real (Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 [97 A.L.R. 1355]; Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670; United States v. Flannery, 268 U.S. 98, 45 S.Ct. 420, 69 L.Ed. 865; McCaughn v. Ludington, 268 U.S. 106, 45 S.Ct. 423, 69 L.Ed. 868)."

What constitutes a *"fixation* of an identifiable event" depends upon the character of the claimed loss. Lewellyn v.

Here, the demolition was an "identifiable" event, the loss was "certain in fact" and the amount of loss was "reasonably * * * ascertainable."[2] The lack

Electric Reduction Co., 275 U.S. 243, 246, 247, 48 S.Ct. 63, 64, 72 L.Ed. 262. If the loss is from a physical happening, such happening is an "identifiable event" and the occurrence of it is a "fixation" of such event. Lewellyn v. Electric Reduction Co., 275 U.S. 243, 247, 48 S.Ct. 63, 64, 72 L.Ed. 262; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S.Ct. 598, 599, 71 L.Ed. 1120. Instances of such physical facts are demolition [Ingle v. Gage, 52 F.(2d) 738, 741 (D.C.W.Dist.N.Y.)], fire (Lewellyn v. Electric Reduction Co., 275 U. S. 243, 247, 48 S.Ct. 63, 64, 72 L.Ed. 262; Commissioner v. Highway Trailer Co., 72 F.(2d) 913 (C.C.A.7), certiorari denied 293 U.S. 626, 55 S.Ct. 346, 79 L. Ed. 713, petition for rehearing denied 294 U.S. 731, 55 S.Ct. 505, 79 L.Ed. 1261; Appeal of Producers Fuel Co., 1 B.T.A. 202; Martin Veneer Co. v. Commissioner, 5 B.T.A. 207) unless there are qualifying conditions (see Pike County Coal Corporation v. Commissioner, 4 B. T.A. 625), flood [Ferguson v. Commissioner, 59 F.(2d) 893 (C.C.A.10)], ice storm [Whipple v. United States, 25 F. (2d) 520 (D.C.D.Mass.)] timber destroying insect [Orono Pulp & Paper Co. v. United States, 34 F.(2d) 714 (D.C.D. Me.)], wreck of automobile on icy road [Shearer v. Anderson, 16 F.(2d) 995, 51 A.L.R. 534 (C.C.A.2)], storm at sea (Appeal of Leland D. Webb, 1 B.T.A. 759) or shipwreck (Green v. Commissioner, 19 B.T.A. 904).

If the loss is from a definite act of some person, such act is the "identifiable event" and the doing thereof is a "fixation" of such event. Instances of this are: Embezzlement [First National Bank of Sharon, Pa., v. Heiner, Collector, 66 F.(2d) 925 (C.C.A.3)], unless changed by circumstances [Douglas County L. & W. Co. v. Commissioner, 43 F.(2d) 904 (C.C. A.9); Ledger Co. v. United States, 37 F. (2d) 775 (Ct.Cl.); John H. Farish & Co. v. Commissioner, 31 F.(2d) 79 (C.C.A.8)], or theft (Lewellyn v. Electric Reduction Co., 275 U.S. 243, 247, 48 S.Ct. 63, 64, 72 L.Ed. 262, unless there are qualifying conditions, see Allied Furriers Corporation v. Commissioner, 24 B.T.A. 457). If the loss is from a contract, the "identifiable event" is the occurrence which establishes the definite existence of the loss and the happening of such occurrence is the "fixation" of such event. Instances of this are: bankruptcy of the debtor [Jeffery v. Commissioner, 62 F. (2d) 661 (C.C.A.6)], liquidation of the debtor [Gowen v. Commissioner, 65 F. (2d) 923 (C.C.A.6), certiorari denied 290

U.S. 687, 54 S.Ct. 123, 78 L.Ed. 592], foreclosure of mortgage [Little v. Helvering, 75 F.(2d) 436 (C.C.A.8)], and whether the contract is entire or divisible [Commissioner v. R. J. Darnell, Inc., 60 F.(2d) 82 (C.C.A.6)]. If the loss is uncertain or contingent, the "identifiable event" is the happening which removes such uncertainty or contingency and such happening is the "fixation" of such event. Instances of this are: parts of construction compensation retained to guarantee maintenance of the construction [Commissioner v. Cleveland Trinidad Paving Co., 62 F.(2d) 85 (C.C.A.6)], financial worthlessness of debtor (Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262) and contract provision for penalty or for premium dependent on performance of contract [Commissioner v. R. J. Darnell, Inc., 60 F.(2d) 82 (C.C.A.6)].

The above citation of adjudicated instances is by no means complete but they serve to illustrate applications of the rule to various situations. They show that the results of applying the rule depend upon the facts of each situation. Also, they show that physical destruction or damage to property may fix the loss as of the time of destruction or damage.

Some of the numerous other cases, not cited here, which reveal applications of the rule to a variety of fact situations are: Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143; Lucas v. North Texas Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; United States v. Anderson, 269 U.S. 422, 46 S. Ct. 131, 70 L.Ed. 347; Howard v. Commissioner, 56 F.(2d) 781 (C.C.A.6), certiorari denied 287 U.S. 619, 53 S.Ct. 19, 77 L.Ed. 537; Dresser v. United States, 55 F.(2d) 499 (Ct.Cl.), certiorari denied 287 U.S. 635, 53 S.Ct. 85, 77 L.Ed. 550; Darling v. Commissioner, 49 F.(2d) 111 (C.C.A.4), certiorari denied 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470; Central Trust Co. v. Burnet, 60 App.D.C. 4, 45 F.(2d) 922; De Loss v. Commissioner, 28 F.(2d) 803 (C.C.A.2), certiorari denied 279 U.S. 840, 49 S.Ct. 254, 73 L.Ed. 987; Royal Packing Co. v. Commissioner, 22 F.(2d) 536 (C.C.A.9).

As said by this court, the most commonly occurring instance of an "identifiable event" is a sale of property. Shoenberg v. Commissioner (C.C.A.) 77 F. (2d) 446, 448, certiorari denied 296 U.S. 586, 56 S.Ct. 101, 80 L.Ed. 414.

2 As to the amount of loss being rea-

of necessity of always waiting for a sale where there has been a partial destruction of the physical property is directly ruled in the Tenth Circuit in Ferguson v. Commissioner (C.C.A.) 59 F.(2d) 893, 894, where the court approved and applied the decision in the Whipple and the Shearer Cases (cited in footnote 1), saying:

"In Whipple v. United States (D.C. Mass.) 25 F.(2d) 520, the court held that damage to shade and ornamental trees from storm was a deductible loss. In Shearer v. Anderson (C.C.A.2) 16 F.(2d) 995, 51 A.L.R. 534, the court held that damage resulting to an automobile from the wrecking thereof on an ice covered road was a deductible loss. In each of these cases there had been no sale of the property involved and there was a physical injury to, rather than a total destruction of such property. The language of the statute is, 'losses arising from destruction of or damage to property.' Loss from damage occasioned by physical injury seems to be clearly within its purview." Also, see Green v. Commissioner, 19 B.T.A. 904.

Our conclusion is that petitioner here was not only not compelled to wait, but could not wait until sale of this property to claim this loss, but that it was deductible only during the tax year of the demolition.

### (b) The Second Contention.

This contention is as to whether the actual demolition of this building took place within this fiscal year beginning February 1, 1929. The undisputed and found facts are as follows: The demolition was determined upon in November, 1928. An arrangement was made with a contractor whereby he was to tear down the building, take out the foundation, dispose of the débris, and fill the excavation. His entire compensation was the material salvaged. The actual work began early in December, 1928, and, by January 20, 1929, the structure was taken down and all valuable salvage material removed from the premises—the unperformed work at that time consisted of removing the foundation and the remaining débris and filling in the excavation. Weather prevented this further work until in the spring of 1929. The determination of the Board as to whether the demolition took place in the fiscal year beginning February 1, 1929 (here in-

volved), or in the prior fiscal year, is as follows:

"Here the determination of respondent that the loss upon the property was not sustained in the taxable year in question upon the sale of the property is presumptively correct. The burden is upon the petitioner to show error in the determination of the respondent. This burden carries with it the incidental burden of showing that the loss was not sustained in the prior year when the building was demolished. From the evidence we cannot determine that the loss was not sustained in the prior year upon the demolition. On the contrary, some of the facts tend to indicate that the loss may have been sustained in such prior year. For instance, by far the greater cost of the property to G. N. Dayton was the house. In 1922 and 1923, he built additions to the house at a cost in excess of $47,000. This tends to show that the greater part of the cost of the property was the building, and that when it was demolished the petitioner lost such greater part of its investment. The evidence shows that after the fiscal year ended January 31, 1929, the petitioner could not and did not receive any salvage or compensation for the demolished building. After that fiscal year the petitioner had no further interest in the building. The material salvaged went to the wrecking company as consideration for the demolition. Furthermore, the evidence shows that the petitioner, on January 31, 1929, made a book entry charging the sum of $35,000 to profit and loss on account of the demolition. This entry, in our opinion, was correct. Good accounting required that since petitioner was on the accrual basis, this item be accrued on the books of petitioner in such year, rather than in the year before us. Under the circumstances we are constrained to approve the action of the respondent in disallowing the deduction of the claimed loss in the year in question."

■ The facts stated in this quotation are undisputed. The reasoning and the conclusions stated therein are sound and are approved. When nothing but the bare foundation remained, petitioner had, under all of the facts here, suffered a loss of the value of the house. It may not be unreasonable to argue that a continuous transaction—such as the demolition of a build-

---

sonably ascertainable. It is an everyday matter in fire insurance to ascertain the loss by destruction of a house by fire.

772

ing—is closed only when the process of destruction and removal is entirely completed. On the other hand, there is here the actuality of loss before that time, the reflection of such loss by petitioner in its own books, and the entire propriety, under its regular system of accounting, of such book showing. Even if these opposing views created a situation of doubt, the Board was justified in casting its decision against petitioner which had the burden of proving the action of the Commissioner to be arbitrary.[3] The result is affirmance of the order of the Board disallowing this item of deduction.

## II.

### The Pension Fund Deduction.

This concerns the disallowance of a deduction of $20,300 claimed to have been contributed by petitioner to an employees' pension fund within this fiscal year ending January 31, 1930. The governing statute is section 23 (q), Revenue Act of 1928 (26 U.S.C.A. § 23 note), which is as follows:

"(q) *Pension Trusts.* An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees (if such trust is exempt from tax under section 165, relating to trusts created for the exclusive benefit of employees) shall be allowed as a deduction (in addition to the contributions to such trust during the taxable year to cover the pension liability accruing during the year, allowed as a deduction under subsection (a) of this section) a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions, but only if such amount (1) has not theretofore been allowable as a deduction, and (2) is apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made."

Petitioner attacks various findings of the Board as to specific matters. It is unnecessary and unprofitable to examine these in detail. The essential and control-

ling facts found by the Board and relied upon by it and which are here necessary to determine this issue are: That petitioner intended this fund to take the form of a trust; that no such trust was formed until February 1, 1930; that no transfer of the above amount was made to the trustee until February 1, 1930.

The evidentiary facts are as follows: July 31, 1929, petitioner determined to establish an employees' pension fund and set aside $10,000 for that purpose. November 15, 1929, a directors meeting of petitioner adopted a resolution which, after setting forth the desirability of providing for pensioning employees and stating "the most effective mode of making suitable provision for said employees * * * appears to the stockholders to be by the establishment of a trust fund," contained the following provisions here pertinent:

"Resolved: that such trust fund be, and the same is hereby established, and that the sum of $10,000.00 heretofore appropriated by this corporation for the benefit and protection as aforesaid of certain of its employees shall be paid to the trustee of said fund to initiate the same.

"Resolved, Further, that Dayton Investment Company, a corporation of the State of Minnesota, be and it is hereby designated as the trustee of said fund, to receive, hold, invest, and, from time to time, in the judgment of its proper directors or officers thereunto authorized, to reinvest the same and any additions to said initial payment which may be made to said trust fund by this corporation. * * *

"Resolved, Further, that upon the delivery to the Secretary of this corporation of the consent of said Dayton Investment Company to act as such trustee and to receive and invest said sum of $10,000.00 for the initiation of said trust fund, the Treasurer of this corporation is hereby authorized to pay over said sum to said Dayton Investment Company, as trustee as aforesaid, for the purposes herein named and not otherwise."

---

[3] Applicable to this situation is the language of the Supreme Court in Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L. R. 1010, as follows:

"The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. And the direction that net income be computed according to the meth-

od of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the act. Its interpretation of the statute and the practice adopted by it should not be interfered with unless clearly unlawful."

Pursuant to this resolution, the aforesaid sum of $10,000 was transferred and set apart by a credit to "Reserve for Pensions" on the books of petitioner. Thereafter, on January 31, 1930, the further sum of $10,300 was treated likewise.

There was testimony that the president of petitioner, who was also president of the Dayton Investment Company, agreed "between ourselves" with the vice president of the Dayton Investment Company, who was also the secretary-treasurer of petitioner "that the Dayton Investment Company would act as trustee of the pension fund" —this was at the time the above resolution was adopted. However, the same witness testified immediately thereafter that "It was contemplated that there would be a written trust." There is no evidence of any written trust until and except the instrument hereinafter noticed, which was not executed until February 1, 1930. The most that can be said of this testimony concerning a verbal acceptance by the contemplated trustee is that it raised a weak conflict with the evident purpose of the resolution to deal with a formal trust thereafter to be created and with the positive evidence that such a "written trust" was contemplated at that time. The finding of the Board that there was no such acceptance on November 15, 1929, is abundantly supported and is binding on this court.

On February 1, 1930, an agreement was executed by petitioner (party of the first part) and Dayton Investment Company (party of the second part). The portions of this agreement here material are as follows:

"The stockholders of the first party have directed the establishment of a trust fund, to be held and administered by a suitable trustee exclusively for the benefit of employees of the first party, who shall be designated from time to time by a resolution of the Board of Directors of the first party as entitled to especial consideration and protection by reason of long and faithful service while in its employ.

"The second party, upon the request of the first party, has consented to act as such trustee, in accordance with the conditions of this agreement hereinafter stated.

"For A Good And Valuable Consideration, passing from the first party to the second party, and in further consideration of the reciprocal agreements and obligations of the respective parties hereto, as hereinafter set out, it is agreed by and between said parties as follows:

"First: The first party, at the time of the execution and delivery of this agreement, has paid over to the second party the sum of twenty thousand dollars ($20,000.00) (the receipt of which by the second party is hereby acknowledged) for the purpose of establishing a trust fund to be increased in amount by the first party, from time to time. * * *

"Second: The second party hereby accepts said payment of twenty thousand dollars ($20,000.00)."

The above facts clearly establish the intention of petitioner to establish this fund solely in the form of a trust fund; to retain control of the appropriated money until the consent of the trustee to serve as such was delivered to the Secretary of petitioner; that the trust intended was not created until February 1, 1930; and that no such consent nor such parting with the money by petitioner before that date occurred.

There was evidence that the above amounts were invested in bonds which were placed in a safety box of the Dayton Investment Company prior to January 31, 1930. At most, this evidence merely raised a conflict with the statements in the trust instrument "The first party, *at the time of the execution and delivery of this agreement,* has paid over to the second party the sum of twenty thousand dollars ($20,000.00) (the receipt of which by the second party is hereby acknowledged) for the purpose of establishing a trust fund" and "The second party *hereby* accepts said payment of twenty thousand dollars ($20,000.00). * * *" (All italics added.)

Above, we have treated this deduction as being governed by section 23 (q) of the act. It is not a proper deduction during this tax year under that section. For the same reasons, it is not deductible during this tax year under section 23 (a) of the act, 26 U.S.C.A. § 23 and note[4] as an "ordinary and necessary" expense. The setting aside of these funds as a "Reserve for Pensions" on the books of petitioner for this taxable year is insufficient, under

[4] Section 23(a), in so far as here pertinent, allows as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

774

the circumstances here, to create an allowable deduction. Lucas v. American Code Co., 280 U.S. 445, 452, 50 S.Ct. 202, 204, 74 L.Ed. 538, 67 A.L.R. 1010.

The parties have discussed some other matters—such as incompleteness of the trust instrument to create a trust because of lack of designation of beneficiaries. None of such matters can alter the determinative facts which are discussed above and which formed the main basis of the decision of the Board.[5] The determination of the Board is substantially supported by the evidence and, therefore, is conclusive here. The action of the Board in disallowing this deduction is affirmed.

The result upon the entire case is affirmance of the order of the Board and dismissal of the petition.

---

[5] In summing up its conclusions the Board said:

"In short, it is our opinion that there was no intention of establishing a valid and enforceable trust during the year before us and that none was established. All the action taken by the petitioner during the fiscal year before us, including ear-marking of bonds and setting them aside, was merely preparatory to the establishment of a pension trust, and no trust was established in that year. We are not unmindful of the fact that the resolution of the board of directors, passed on November 16 [15], 1929, states that 'such trust fund be and the same is hereby created', and that 'the Dayton Investment Company * * * be and it is hereby designated as the trustee of said fund'. This language is not determinative in view of all the other facts and circumstances which must also be considered."