### GREGORY v. KELLY, Collector of Internal Revenue.
### No. 115.

District Court, D. New Jersey.
July 10, 1941.

his wife, Virginia E. Gregory, to recover a deficiency tax assessed against his wife and himself by the Commissioner of Internal Revenue. Upon the death of Julian A. Gregory, the Surrogate's Court appointed Julian A. Gregory, Jr., and Stewart E. Gregory, executors of his will and Julian A. Gregory, Jr., the substitutionary administrator with the will annexed of the will of Virginia E. Gregory.

### Facts

1. Julian A. Gregory, the plaintiff, and his wife, Virginia E. Gregory, filed a joint federal income tax return for the year 1934, in which they deducted $20,000, from gross income on the ground that certain shares of stock of Mrs. Gregory in Pine Products Co., Ltd., became worthless during that year.

2. When the return was audited by the Commissioner of Internal Revenue this loss was disallowed and a deficiency was assessed against the Gregorys which was paid by them under protest on January 20th or 21st, 1937.

3. On October 23, 1937, a claim for refund was filed with the Commissioner but it was rejected on April 20, 1938, and this action ensues.

4. In the year 1922, one Gordon Bryan became the grantee of a concession agreement issued to him by The Belize Estate and Produce Company, Ltd., which permitted him to operate a large piece of timber land in British Honduras for wood products. The said agreement contained a provision that the grantee of the concession should pay a minimum annual royalty of $5,000, and if a default in payment of an installment of $5,000 should occur, interest should be paid on the unpaid portion at the rate of 8% per annum. The agreement also provided for the cancellation of the concession upon a default in the payment of a royalty installment after written notice was sent to the holder of the concession.

5. On October 30, 1923, Gordon Bryan assigned the concession agreement to Pine Products Co., Ltd., with the consent of The Belize Estate and Produce Company, Ltd.

6. It was not the intention of Pine Products Co., Ltd., to operate the land itself but to interest others to operate the property under the concession.

7. Mrs. Gregory purchased 250 shares of stock in Pine Products Co., Ltd., for the sum of $20,000, during 1923 and 1924.

George S. Silzer, of Newark, N. J., for plaintiff.

William F. Smith, U. S. Atty., of Newark, N. J., Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Stephen J. Angland, Sp. Assts. to Atty. Gen., for defendant.

WALKER, District Judge.

This is a suit commenced by Julian A. Gregory, individually and as executor for

8. After the year 1929 no royalties were paid under the terms of the concession by Pine Products Co., Ltd., but interest on the unpaid royalties was paid to The Belize Estate and Produce Co., Ltd., up to March 1, 1933.

9. In its income tax return for the year 1930, which was not filed until April 24, 1931, Pine Products Co., Ltd., stated: "This company has not been operated commercially during the past year." Accompanying the return was a letter from the plaintiff saying that the stockholders in the company considered their holdings worthless, that the minimum annual royalties had not been paid for two years, that the officers looked upon the company as dead and that a judgment for $20,000 had been procured against the company in 1928, which however, was going to be satisfied. No net income was shown by the return.

10. The income tax return for 1931 showed a loss of $135.59. It was accompanied by a letter dated April 11, 1932, from the president of Pine Products Co., Ltd., saying that the company was so near going out of business that the return had been overlooked until then.

11. This was the last income tax return filed by the company although capital stock returns for 1934 and 1935 were sent to the Collector of Internal Revenue.

12. In 1931 and 1932 outside parties paid $8,000 to Pine Products Co., Ltd., which payment gave them the right to operate the properties up to March 1, 1933.

13. From this $8,000, Pine Products Co., Ltd., paid The Belize Estate and Produce Co., Ltd., interest upon all past due royalties up to March 1, 1933, after which time no more money was ever paid to the latter company.

14. In May, 1933, three checks for $1,200 each were made out to three stockholders of Pine Products Co., Ltd., as part payment on certain notes of the company, which had been sold to raise money.

15. In the fall of 1933, a stockholders' meeting was held of Pine Products Co., Ltd., but although there was no money in the treasury the stockholders did not assess themselves in order to be able to pay interest or royalties to the grantor of the concession.

16. The plaintiff and the president of Pine Products Company, Ltd., both sold their stock in 1933 for about one cent a share, but the plaintiff's wife retained her holdings in the company.

17. The Belize Estate and Produce Company, Ltd., cancelled the concession on January 5, 1934, by mailing a letter to Pine Products Company, Ltd., as they were permitted to do under the agreement.

18. The nonpayment of the 1931 Delaware Franchise Tax resulted in dissolution of Pine Products Company, Ltd., on or about April 1, 1934.

19. The only asset of the company was its rights under the concession and the only books kept by it were check books.

## Discussion

◼ The question to be determined in the case presented here, is whether the statute [1] permits the taxpayers to deduct the loss in question from their gross income on their joint Federal Income Tax Return for the year 1934. In order to determine the year in which a loss can be established as such, for it may be deducted only then, the test to be applied is one of a practical not of a legal nature [2] and it consists in ascertaining when an identifiable event occurred that fixes the date on

---

[1] Revenue Act of 1932, c. 209, 47 Stat. 169, 179, 26 U.S.C.A.Int.Rev.Acts, page 490:

"§ 23. Deductions from Gross Income * * *

"(e) Losses by Individuals. Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

Treasury Regulations 103, promulgated under the Internal Revenue Code:

Sec. 19.23 (e)—4. Shrinkage in value of stocks.

If stock of a corporation becomes worthless, its cost or other basis as determined and adjusted under section 113 and sections 19.113(b) (1)—1 to 19/113 (b) (3)—2, inclusive, is deductible by the owner for the taxable year in which the stock became worthless, provided a satisfactory showing is made of its worthlessness.

[2] Lucas v. American Code Co., Inc., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Brown v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 101, 103.

which an asset became worthless. This rule of law is stated as follows: "Losses are deductible from income for those years only in which the losses are sustained. In order that a loss arising from investment in the capital stock of a corporation may be regarded as 'sustained' in any given year, it is ordinarily necessary either that there be a final disposition of the investment, as by sale or exchange, or that there be some 'identifiable event' by which the loss is otherwise clearly evidenced."[3]

While the identifiable event is ordinarily a single event, it may be composed or comprised of a series or group of happenings.[4] The case before this court is of the latter type and the facts lead to the inescapable conclusion that the stock became worthless in the year 1933. We do not find it necessary to go into all the facts fixing the year 1933, as that in which the stock became worthless but some of them are the payment of three notes of Pine Products Company, Ltd., to the stockholders thereof instead of paying interest to The Belize Estate and Produce Co., Ltd., the selling of their stock by several of the major stockholders, and the holding of a stockholders' meeting in which the stockholders did not assess themselves in order to save the concession.

The statute which allows a loss to be taken "provided a satisfactory showing of worthlessness be made" puts the burden of proving that the stock became worthless in 1934 upon the taxpayer.[5] It is the contention of the plaintiff that the cancellation of the concession agreement on January 5, 1934, was the identifiable event and that the company possessed all its assets and opportunity for profit it ever had until the cancellation of the concession. This latter theory is not correct, as the concession could not have been cancelled by The Belize Estate and Produce Co., Ltd., until 1929 when Pine Products Company, Ltd., ceased paying royalties, so that it had more opportunity for profit until 1929 than it ever had thereafter. From then on it did not know whether or not it might find in the morning mail a letter from The Belize Estate and Produce Co., Ltd., terminating the concession. True, there was a chance that some rash and hopeful speculator might have taken the concession but for all practical and realistic purposes the corporation had been abandoned and the stock had become worthless prior to 1934. It is only necessary to quote from the opinion of Judge Learned Hand to show how other courts have approached the contention that the company had a possibility of success until 1934. "True, it was not possible to say beyond imaginable peradventure that these assets might not be snatched at by some impressionable buyer, who did not share their owners' estimate of their value. But any such expectation was plainly illusory, and taxes, like other human affairs, must be determined without the gift of divination."[6]

## Conclusion of Law

The plaintiff has failed to prove that the stock of Pine Products Company, Ltd., became worthless in the year 1934, and the taxes involved herein were legally assessed against and collected from Julian A. Gregory and Virginia E. Gregory.

[3] Gowen v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 923, 924, certiorari denied 290 U.S. 687, 54 S.Ct. 123, 78 L.Ed. 592. See, also, United States v. S. S. White Dental Mfg. Co. of Pennsylvania, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Brown v. Commissioner, supra; Bartlett v. Commissioner of Internal Revenue, 4 Cir., 114 F.2d 634; Burdan v. Commissioner of Internal Revenue, 3 Cir., 106 F.2d 207. For a list of cases showing identifiable events see Dayton Co. v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 767.

[4] Rosing v. Corwin, 2 Cir., 88 F.2d 415.

[5] Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212; Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623; Nicholson et al. v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 978, 981; Bartlett v. Commissioner of Internal Revenue, 4 Cir., supra; Burdan v. Commissioner of Internal Revenue, 3 Cir., supra.

[6] De Loss v. Commissioner of Internal Revenue, 2 Cir., 28 F.2d 803, 804. See also Gowen v. Commissioner of Internal Revenue, supra.